FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR 31  PM 5: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PERNELL FORD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CASE NO. 95-B-3020-S |
| | ) |
| RON JONES, et al, | ) |
| | ) |
| Respondents. | ) |

ENTERED

MAR 3 1 1999

## MEMORANDUM OPINION

Before the court is the petitioner's *pro se* motion to dismiss his petition for writ of habeas corpus filed on May 30, 1997. Also before the court is the petitioner's request for leave to proceed *pro se*. The petitioner is represented by Ms. LaJuana Davis, who argues that the petitioner is not mentally competent to discharge her as counsel and dismiss his petition.

## BACKGROUND

In 1984, an Alabama state court sentenced the petitioner to death for murdering two people during the course of burglarizing their home. *See Ford v. State*, 515 So. 2d 34 (Ala. Crim. App. 1986). After following the direct appeal process, the petitioner filed a petition for post-conviction relief in state court, which was denied, and his subsequent appeals of that denial were unavailing. *Ex Parte Ford*, 630 So. 2d 113 (Ala. 1993), *cert. denied*, 511 U.S. 1078. With the petitioner's consent, Ms. Davis filed on November 21, 1995, the petition for writ of habeas corpus currently pending before the court. (Doc. 1).[1] The petitioner now seeks

---

[1] References herein to "Doc. ___" are to the document numbers assigned the pleadings by the Clerk of the Court.

to dismiss that petition.[2]

The petitioner's motion to dismiss and his request for leave to proceed *pro se* were heard and considered on referral by Magistrate Judge Robert R. Armstrong, Jr. The court will summarize the proceedings employed by Judge Armstrong, as they lend weight to his ultimate findings and conclusions.

## PROCEEDINGS EMPLOYED BY JUDGE ARMSTRONG

On September 5, 1997, Judge Armstrong held a hearing on the motion to dismiss, during which he spoke to the petitioner about his motion and had the opportunity to observe his demeanor. (Doc. 35 - "Order to Nominate Expert"). Although Judge Armstrong did not perceive any indication that the petitioner was mentally incompetent, he ordered the production of the petitioner's prison records because Ms. Davis asserted that the records contained evidence that the petitioner was mentally incompetent. (Doc. 25 - "Order Granting Motion for Discovery of Records"; Docs. 26-28 - each titled "Order to Release Records"; Doc. 35).

In reviewing prison records produced in response to his orders, Judge Armstrong found indications that the petitioner had experienced psychosis, paranoia and depression during his incarceration and that he had been treated with psychotropic medication for these problems. (Doc. 35). Although Judge Armstrong noted that the state courts had twice found the petitioner to be competent, he noted that it had been eight years since the petitioner's last competency evaluation. (*Id.*). He also noted that the experts conducting that evaluation were apparently unaware of the mental problems the petitioner had manifested in prison or the

---

[2]In addition to filing the instant motion to dismiss, the petitioner has sent numerous letters to the court, asking that his petition be dismissed.

2

treatment he had received for those problems. (*Id.*). Judge Armstrong therefore decided to appoint a neutral psychiatric expert nominated by the parties to assist him in making determinations regarding the petitioner's competence. (*Id.*). Ms. Davis's nominees included Robert Rollins, M.D., who is Chief Forensic Psychiatrist at Dorothea Dix Hospital, a state facility in Raleigh, North Carolina.[3] (Doc. 36 - "Order to Show Cause"; Doc. 38 - "Affidavit"). Ms. Valerie Spalding, an attorney in the Capital Litigation Section of the Office of the Attorney General of North Carolina, submitted an affidavit describing Dr. Rollins as "North Carolina's chief forensic psychiatrist" and stating that, as such, he "functions as a disinterested witness whether he testifies for the State or for a particular witness." (Doc. 38 - "Affidavit").

On March 5, 1998, over the respondents' objections, Judge Armstrong appointed Robert Rollins, M.D. as the court's psychiatric expert to examine the petitioner and assist the court in determining whether the petitioner is competent.[4] (Doc. 40 - "Order Appointing

---

[3] The court notes that Dr. Rollins has performed 200 mental competency evaluations a year in criminal cases since 1972. (Doc. 66 - "Transcript of Proceedings" at 94). He has also performed competency evaluations in three other death penalty cases like this, in which a condemned person sought to waive his rights to further review of his conviction and sentence. (*Id.* at 95). In one of these cases, Dr. Rollins found that the defendant was *not* competent to waive his rights to further review. (*Id.* at 95-96). The fact that Dr. Rollins has arrived at different conclusions as to the mental competence of defendants in cases similar to this lends further weight and credibility to his opinion that the petitioner is competent.

[4] In appointing Dr. Rollins, Judge Armstrong directed him to make findings that would

> assist the court in determining whether the petitioner "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the

3

Psychiatric Expert"; Doc. 37 - Answer to Show Cause Order"). Dr. Rollins examined the petitioner and subsequently filed his report on May 20, 1998. (Doc. 52 - "Psychiatric Evaluation"). In his report, Dr. Rollins acknowledged that the petitioner suffers problems such as depression and a personality disorder, but opined that the petitioner "is competent to withdraw his habeas corpus petition and to thereby abandon further proceedings with respect to his capital murder conviction and sentence and waive his right to the assistance of counsel." (*Id.* at 10-11).

After Dr. Rollins filed his report, Ms. Davis filed on May 28, 1998, a motion for leave to have the petitioner examined by Dr. Jonathan Pincus. (Doc. 55 - "Motion for Access to Client for Psychological Evaluation"). On June 3, 1998, Judge Armstrong granted this motion over the respondents' objections. (Doc 59 - "Order"; Doc. 57 - "Objection to Motion for

---

> premises." *Rees v. Peyton*, 384 U.S. 312, 314, 86 S. Ct. 1505, 16 L. Ed. 2d 583 (1966). Specifically, Dr. Rollins's findings should assist the court in determining (1) whether the petitioner suffers from a mental disease, disorder or defect, (2) whether a mental disease, disorder or defect prevents the petitioner from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder or defect prevents the petitioner from making a rational choice among his options. *Lonchar v. Zant*, 978 F. 2d 637, 641-42 (11th Cir. 1992) (citation omitted).
> . . .
>
> Dr. Rollins's findings should assist the court in determining whether the petitioner has both a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him," *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824, 825 (per curiam). *See Godinez v. Moran*, 509 U.S. 389, 400-402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (citations omitted).

(Doc. 40 - Order Appointing Psychiatric Expert at n. 2-3).

Access to Client for Psychological Evaluation").

On June 10, 1998, the court held a hearing in which Dr. Rollins testified as to his findings and answered questions of counsel. (Doc. 66 - "Transcript of Proceedings"). At this hearing, Judge Armstrong spoke with the petitioner about his understanding of his situation and the consequences of his motion. (*Id.* at 100-08). Ms. Davis then elicited certain testimony from the petitioner about a strange religious belief that God allows him to "translate" to places outside of prison and to have relationships and experiences in the outside world. (*Id.* at 110-34). Dr. Rollins stated that he would need to re-examine the petitioner to form an opinion about this belief. (*Id.* at 134-35). Judge Armstrong assented.

After re-interviewing the petitioner, Dr. Rollins filed an addendum report on July 14, 1998, opining that the petitioner's "translation" beliefs represent "fantasy or wish fulfillment," and do not impair his ability to make decisions. (Doc. 61 - "Addendum Psychiatric Evaluation"). This report was based upon his re-examination of the petitioner and his discussions with a psychiatrist and a psychologist who have treated the petitioner during his incarceration. (*Id.*). Dr. Rollins also stated in his report that the petitioner said he would continue his appeals if he had an income of $50.00 per month or if there was a possibility that the judge would grant a new trial that would lead to a sentence with a specific release date. (*Id.*).

After Dr. Rollins filed his second report, Judge Armstrong received another letter from the petitioner, asking for his petition to be dismissed. (Doc. 64 - "Order"). Yet, because Dr. Rollins's second report indicated that the petitioner might be ambivalent about dismissing his petition, Judge Armstrong held a telephone conference in which the petitioner, Ms. Davis and

respondents' counsel participated. (Doc. 72 - "Transcript of Telephone Conference"). During this conference, the petitioner reaffirmed his desire to dismiss his petition. (*Id.* at 3-5).

Before Judge Armstrong issued his Report and Recommendation, Ms. Davis filed Offers of Proof (Doc. 67), including the findings of Jonathan H. Pincus, M.D. that the petitioner is incompetent. Although Judge Armstrong held that the respondents' objections were due to be sustained with respect to Dr. Pincus's report, he did discuss Dr. Pincus's conclusions in his Report and Recommendation to this court. Only after all of these proceedings did Judge Armstrong enter a Report and Recommendation in which he found the petitioner competent to dismiss his habeas petition and to proceed *pro se*. Ms. Davis then filed objections to the Report and Recommendation, which are discussed below.

The court notes that these proceedings allowed the Ms. Davis and respondents' counsel ample opportunity to state their positions, to present evidence and to test the evidence presented. They also allowed Judge Armstrong to speak with and observe the petitioner several times, and to thoroughly query the petitioner about his intent and his understanding regarding the motion to dismiss. Against this procedural background, the court will address Ms. Davis's objections to the Report and Recommendation.

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

### Objections as to the Proceedings

**Lack of an Adversarial Proceeding**

In her objections, Ms. Davis finds fault with certain aspects of the proceedings. She complains that Judge Armstrong never held an adversarial hearing. This objection is due to be overruled. Insofar as Ms. Davis's complaint is that Judge Armstrong did not initially employ

6

the "dueling experts" format in hearing this matter, her complaint is without merit. Judge Armstrong appointed a psychiatrist that Ms. Davis herself nominated as a neutral expert. In doing so, he did not forbid the parties to submit their own expert opinions as to the petitioner's competence. Over two months after Dr. Rollins filed his initial report, Ms. Davis filed Offers of Proof containing the report of another expert of her choosing, Dr. Pincus. Although Judge Armstrong believed that Dr. Pincus's report was offered in an untimely manner, he considered it and found that it did not affect the findings or conclusions set forth in his Report and Recommendation. The respondents submitted no expert opinion or testimony. The Magistrate Judge conducted three hearings on this matter, one of which was by telephone, during each of which Ms. Davis had the opportunity to state her position. She had the opportunity to present extensive evidence.

It appears that Judge Armstrong took great pains to ensure that Ms. Davis had ample opportunity to state her position and support it, and to ensure that relevant evidence would be presented and considered. If anything, the process employed by Judge Armstrong afforded Ms. Davis an advantage over the respondents, as her nominee was chosen as the court's expert and as the court considered the findings of Ms. Davis's own expert as well, whereas the respondents did not offer any expert testimony.

**Refusal to Grant Discovery**

Ms. Davis next complains that, while Judge Armstrong granted her request for discovery of all of the petitioner's prison records, he refused to grant other extensive discovery requests she filed afterward. This objection is due to be overruled. A primary reason Ms. Davis stated for the discovery requests was to obtain background information to assist Dr.

7

Rollins in his evaluation of the petitioner. (Doc. 39 - Motion for Discovery of Specified Records). Most of the discovery sought involves information related to the petitioner's childhood, his 1984 trial and his earlier criminal offenses.[5] Ms. Davis's discovery motion was denied only after Dr. Rollins examined the motion and stated that he did not need any of the requested information in order to conduct an evaluation of the petitioner's competence. (Doc. 42 - "Order"). Indeed, Dr. Rollins's first report shows that he reviewed numerous documents, including the petitioner's medical and administrative files from prison, as well as his trial record, which included medical and sociological information about the petitioner's childhood and youth. (Doc. 52). The court also notes that Ms. Davis's own expert, Dr. Pincus, did not state in his report that he lacked information critical to forming an opinion about the petitioner's competence, which information he presumably would have lacked if the denial of Ms. Davis's discovery requests had actually been as significant as she argues. (Doc. 67).

**Denial of Offers of Proof**

Ms. Davis further argues that Judge Armstrong improperly denied her Offers of Proof, foreclosed any response to Dr. Rollins's report and prevented her from offering Dr. Pincus for questioning. The timing of the events relevant to these objections is as follows: Dr. Rollins filed his first report on May 20, 1998. (Doc. 52). Ms. Davis moved that Dr. Pincus be allowed access to the petitioner on May 28, 1998. (Doc. 55). Almost two weeks later, Judge Armstrong held the June 10, 1998, hearing at which the parties understood that Dr. Rollins

---

[5]The court notes that Dr. Rollins was required to render findings regarding whether the petitioner is competent at the *current* time, not at the time that he committed the crime or at the time of trial.

would present his testimony and be subject to their questions. (Doc. 51 - "Order"). Ms. Davis did not present Dr. Pincus for questioning at that hearing, nor did she move to be allowed to do so. She did not request a continuance to allow Dr. Pincus to prepare for the hearing or attend it. On July 13, 1998, Dr. Pincus evaluated the petitioner. (Doc. 67 - "Offers of Proof"). Dr. Rollins filed his second report on July 14, 1998. (Doc. 61). Only after this did Ms. Davis indicate that she intended to file Dr. Pincus's report. (Doc. 70 at 22). On July 30, 1998, Ms. Davis filed her Offers of Proof (Doc. 67), which included Dr. Pincus's report. The respondents objected. (Doc. 69 - "Objection to Motion for Leave to Present Additional Evidence"). Although Judge Armstrong found that the respondents' objections were due to be granted with respect to Dr. Pincus's report, he actually considered the report and found that it did not change his findings and conclusions. (Doc. 70 at 23-24).

With respect to Ms. Davis's objection that Judge Armstrong improperly denied her Offers of Proof, which contained Dr. Pincus's report, the court notes that any impropriety in Judge Armstrong's finding the report to be untimely submitted is academic, since he considered the impact of the report on his findings and conclusions, even though the respondents had not yet been given a chance to test Dr. Pincus's opinions.[6] This objection is thus due to be overruled.

---

[6]The Offers of Proof also contain allegations that a letter sent by the petitioner to the court, asking for the dismissal of his petition, was not written in his own hand and his name was spelled "Parnell." In the telephone conference Judge Armstrong held on August 13, 1998, the petitioner stated that he did, in fact, have a friend print this letter for him and that he signed his name to it. (Doc.72 - "Transcript of Phone Conference" at 4). He stated that he sometimes spells his name "Parnell," as he did in that letter to the court. (*Id.*).

9

The court notes that Judge Armstrong was justified in assigning limited weight to Dr. Pincus's report and in doubting the credibility of the opinions stated therein. As Judge Armstrong notes, the report reveals that Dr. Pincus assumes that the petitioner's motion to dismiss his petition is irrational *per se*. (*Id.* at 23-24). This assumption detracts from the weight and credibility of Dr. Pincus's findings and raises doubts that Dr. Pincus would ever find any death row petitioner competent to dismiss his or her petition. Judge Armstrong found Dr. Pincus's assumption to be inconsistent with the petitioner's testimony, which indicates that he has rational reasons for wanting to dismiss his habeas petition. The court agrees and further notes that United States Supreme Court essentially rejected Dr. Pincus's view when it found that even a death row petitioner may competently waive further review of his conviction and sentence. *See Gilmore v. Utah*, 429 U.S. 1012 (1976).

**Foreclosure of response to Dr. Rollins's report; Failure to conduct hearing to take testimony from Dr. Pincus**

With respect to Ms. Davis's objection that Judge Armstrong improperly foreclosed any response to Dr. Rollins's report and prevented her from offering Dr. Pincus for questioning, the court notes, as set forth above, that Judge Armstrong did consider Dr. Pincus's report in his Report and Recommendation. Any questioning that was foreclosed actually impacted the respondents, who did not have a chance to cross-examine Dr. Pincus. To the extent that Ms. Davis wished to offer additional information from Dr. Pincus, she could easily have filed additional offers of proof. Although Ms. Davis also complains that Judge Armstrong failed to schedule an additional hearing for the presentation of Dr. Pincus, the proper time for her to have offered his testimony was most likely at the June 10, 1998, hearing. Dr. Pincus's

10

absence from the June 10, 1998, hearing prevented Dr. Rollins from being able to answer in person the criticism of his findings and conclusions and to hear and respond to Dr. Pincus's findings and conclusions. In order to proceed as Ms. Davis now says he should have, Judge Armstrong would have been forced to convene yet another hearing and arrange for Dr. Rollins to attend, at a cost of $200 per hour. (Doc. 40 - "Order Appointing Psychiatric Expert"). Ms. Davis knew about Dr. Rollins's opinion several weeks before the June 10, 1998, hearing and, knowing of the expense the court would incur in arranging for his attendance at the hearing, she should have been ready to present her own expert then, and to provide any follow-up submissions from him shortly thereafter. In the alternative, she should have moved for the hearing to be postponed. If Ms. Davis had doubts about the process for submitting expert testimony, she should have at least asked the court for clarification, rather than assuming that she could submit such testimony at her convenience and thereby trigger another hearing in this matter. In any event, Judge Armstrong did consider Dr. Pincus's report, although he found that it did not change his findings and conclusions. These objections are due to be overruled.

### Objections to the substance of Dr. Rollins's Opinion

**Adequacy of Dr. Rollins's Consideration of the petitioner's mental health history**

In her objections, Ms. Davis complains that Dr. Rollins gave "short shrift" to the "full picture of [the petitioner's] mental health." (Objections to the Magistrate's Report and Recommendation at 10). She complained that he reviewed only some of the mental health records that were available and that he failed to interview people other than the petitioner. This objection is due to be overruled. The court notes that, in response to Ms. Davis's

11

question as to whether all the information significant to Dr. Rollins was contained in his report, he stated as follows: "I reviewed, as I say, 25 pounds of records and I thought these were significant things. I can't say that every significant thing was included or that everything I included ultimately was the most significant. But that was in my judgment, the more significant material." (Doc. 66 at 70). The court also notes that Dr. Rollins's testimony reflects his familiarity with information regarding the petitioner's background and mental health history, although he admitted that he did not recall certain particular documents Ms. Davis showed to him during the June 10, 1998, hearing. (Doc. 66 at 41-45, 51-57, 69-70). The court further notes that, for his second report to the court, Dr. Rollins did speak to two of the mental health professionals who have worked with the petitioner during his incarceration, but the information they gave him did not change his mind about the petitioner's competence. (Doc. 61 - "Addendum Psychiatric Evaluation").

    Ms. Davis next complains that Dr. Rollins failed to assign the proper significance to the petitioner's mental health history and background. This objection is due to be overruled. Dr. Rollins's testimony and reports clearly show that he did consider the petitioner's mental health history and background, but that it simply did not lead him to conclude that the petitioner is incompetent. Although Ms. Davis may disagree with the emphasis or lack of it that Dr. Rollins placed on certain information in forming his findings, the court is satisfied, after independently reviewing the Dr. Rollins's reports and testimony, that his evaluation was adequate and that he considered the record information relevant to his decision.

**Adequacy of Dr. Rollins's scrutiny of the petitioner's religious beliefs**

Ms. Davis questions Dr. Rollins's finding that the petitioner's belief at trial that God would reveal himself and resurrect his murder victims was "a wish fulfillment under stress that represents impaired reality testing." (Doc. 66 at 17). Ms. Davis argues that such a belief can only be the result of mental illness. This objection is due to be overruled. Dr. Rollins stressed that this statement was merely one possible explanation of the petitioner's behavior during trial and that he did not thoroughly assess this issue, because he was charged with evaluating the petitioner's *current* competence, not his competence at the time of trial in 1984. (*Id.* at 18-20). Ms. Davis's objection does not reveal Dr. Rollins's findings to be unreliable or unacceptable in any regard.

Ms. Davis next argues that the petitioner's belief that, after death, he will sit at God's side in Heaven is delusional and is not part of a normal religious belief system. She argues that he merely filed his motion to dismiss in order to commit suicide in pursuit of this delusion. She questions the validity of Dr. Rollins's opinion to the contrary. Dr. Rollins stated his perception of these beliefs as follows: "I took that as meaning that Mr. Ford believes in the afterlife[,] that he is going to have a cherished position in heaven, that he is going to be respected, and that he is going to be comfortable and happy there." (Doc. 66 at 100-01). Dr. Rollins's consideration of the petitioner's beliefs about an afterlife does not appear to be unreasonable or perfunctory, and it does not render Dr. Rollins's findings unreliable or unacceptable. This objection is due to be overruled.

**Propriety of Dr. Rollins's consideration of the petitioner's cultural background**

Ms. Davis argues that Dr. Rollins allowed racial stereotypes to infect his evaluation of the petitioner. Specifically, Ms. Davis asserts that Dr. Rollins improperly attributed certain of the petitioner's religious beliefs to his cultural background as an African-American rather than to mental illness. This objection is due to be overruled. A review of the transcript reveals that the subject of the objection is Dr. Rollins's attempt to explain the various factors that he considers in attempting to discern whether a stated religious belief of an examinee is the result of a mental disorder. (Doc. 66 at 97-101; *see also id.* at 23-28). One of the factors he considers is the cultural background of the person he is evaluating, and how it may be different from his own background. (*Id.* at 97-101). Those differences, he explained, can be obstacles in performing an effective evaluation. (*Id.* at 98-99). He stated that, in his experience, he has observed that certain of the petitioner's religious beliefs are held not only by African-Americans, but also by many Caucasians, particularly in the southeastern area of the United States. (*Id.* at 98-100). He explained that this was why, in the course of forming his opinions as to the petitioner's competence, he did not assign the significance to those beliefs that Ms. Davis thought improper. In the context of Dr. Rollins's complete testimony at the June 10, 1998, hearing and of his written reports, the court finds that Ms. Davis's objection does not show Dr. Rollins's opinion to be in any way unreliable or unacceptable.

**Validity of Dr. Rollins's findings under the *Lonchar* test**

Ms. Davis next complains that when she asked Dr. Rollins what legal rights the petitioner was giving up, he said, "Well he doesn't know and I don't know either." She complains that Dr. Rollins testified that whether the petitioner "has any understanding of the

legal issues that he is waiving" is outside the area of his expertise. (Doc. 66 at 81). Ms. Davis argues that this indicates that Dr. Rollins did not properly investigate whether the petitioner understands the rights that he is waiving. The court notes that Ms. Davis actually asked Dr. Rollins not "what legal rights [the petitioner] was giving up," (Objections to the Magistrate Judge's Report and Recommendation at 10), but whether the petitioner "knows what legal issues he has that he is waiving." (Doc. 66 at 81). There is no evidence that Dr. Rollins was provided with a copy of the petitioner's habeas corpus petition or that he has the legal training to decipher and understand each of the legal issues raised therein.

This objection appears to be premised on a misunderstanding of the required showings under the second and third prongs of *Lonchar v. Zant*, 978 F. 2d 637, 641-42 (11th Cir. 1992): "whether a mental disease, disorder or defect prevents the petitioner from understanding his legal position and the options available to him" and "whether a mental disease, disorder or defect prevents the petitioner from making a rational choice among his options." Under *Lonchar*, a petitioner need not understand each of the legal issues framed in his habeas petition, as Ms. Davis implies; the *Lonchar* court found its petitioner competent under the second and third prongs, because "[t]his individual knows what he has been charged with. He recognizes the penalty that has been handed down and what the ultimate outcome of that penalty will be if it in fact is imposed upon him and he is executed," and because "Lonchar exhibited a basic understanding of the habeas proceedings, persisted in his opposition to further review of his convictions, and stated that he understood that without further proceedings he would be executed." *Lonchar*, 978 F.2d at 642.

The record reveals that, like the petitioner in *Lonchar*, the petitioner in this case understands the "bottom line" of his legal situation: he must continue to engage in the review process, even though it may afford him no ultimate relief, or be executed. (Doc. 29 at 15-18; Doc. 66 at 101-04). He need not understand the particulars of each of the claims Ms. Davis has listed in his habeas petition or the likelihood of his prevailing on any or all of them. He must simply understand that, in his current legal position, he can either proceed with his petition or be executed, and he must be able to make a rational choice among those options. This objection casts no doubt on the validity of Dr. Rollins's findings and is thus due to be overruled.

## COMPETENCE OF THE PETITIONER

Judge Armstrong found that the petitioner is competent to proceed *pro se* and to dismiss his habeas petition. The court agrees. Judge Armstrong found that the petitioner does not meet the three-pronged test for incompetence set forth in *Lonchar v. Zant*, 978 F. 2d 637 (11th Cir. 1992). Under *Lonchar*, the court must determine (1) whether the petitioner suffers from a mental disease, disorder or defect, (2) whether a mental disease, disorder or defect prevents the petitioner from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder or defect prevents the petitioner from making a rational choice among his options. *Lonchar*, 978 F.2d at 641-42.[7] It is clear that the petitioner has

---

[7] In the Eleventh Circuit, these are the particular inquiries a court must make to determine whether the petitioner "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966).

significant behavioral and emotional problems and that he has led a very troubled life, but even if the court assumes that this allows the petitioner to meet the first prong of *Lonchar*, the evidence shows that he fails the next two prongs because, as stated above, the petitioner plainly understands that, in his legal situation, he must choose either to continue his legal challenges or be executed. (Doc. 29 at 15-18; Doc. 66 at 101-04). The evidence also indicates, as Judge Armstrong noted, that the petitioner has rational reasons for choosing the latter of these two options: he is weary of languishing in prison, he is justly pessimistic that he will ever get out of prison, and he believes that he will be happier in the afterlife. (Doc. 29 at 18, 26, 30-31; Doc. 66 at 104-07). Although Ms. Davis argues that the last of these considerations is not a normal religious belief but rather an insane delusion driving the petitioner to effectively commit suicide, this court agrees with Judge Armstrong that the petitioner's testimony proves otherwise. In addition, Dr. Rollins's testimony supports the finding that the petitioner is competent to dismiss his habeas petition.

    Judge Armstrong also found that the petitioner is competent to dismiss Ms. Davis and proceed *pro se*, and the court agrees. The petitioner is competent to dismiss Ms. Davis if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him," *Dusky v. United States*, 362 U.S. 402, 402 (per curiam). *See Godinez v. Moran*, 509 U.S. 389, 400-402 (1993). As stated above, the petitioner clearly understands his legal situation, the significance of the proceedings against him and the choices available to him. (Doc. 29 at 15-18; Doc. 66 at 101-04). He knows what he was convicted of and how he came to be in his current legal situation. (*Id.*). He understands the ramifications of dismissing his

17

petition. (*Id.*). His testimony shows that he is able to consult with his lawyer rationally. He was able to rationally explain why he allowed Ms. Davis to file a habeas petition on his behalf and why he changed his mind and decided to dismiss it. (Doc. 29 at 14-17). He was able to recount the rationale Ms. Davis offered to him for proceeding with the habeas petition, rather than dismissing it. (*Id.* at 16). His testimony as whole shows that he can communicate with other persons rationally and that he is capable of rationally consulting with an attorney. Dr. Rollins's reports offer further support for the finding that the petitioner is competent to dismiss Ms. Davis as his attorney.

## CONCLUSION

The court has considered the entire file in this action, along with Ms. Davis's objections, the relevant law and Judge Armstrong's Report and Recommendation and has reached an independent conclusion that the Report and Recommendation are due to be adopted and approved. Although the court deplores the petitioner's decision to dismiss his habeas petition, he has the right to make that decision, provided that he is competent to do so, and the evidence indicates that he is. In accordance with the Report and Recommendation and with the court's independent findings stated herein, an appropriate Order will be entered contemporaneously herewith.

DONE this **31st** of March, 1999.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge