FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL -1 PM 5: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| PERNELL FORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 95-B-3020-S |
| | ) | |
| MICHAEL HALEY, | ) | |
| | ) | |
| Respondent.[1] | ) | |

ENTERED
JUL - 1 1999

## MEMORANDUM OPINION

Before the court is a Motion to Alter or Amend Judgment filed on the petitioner's behalf by Ms. LaJuana Davis. That motion includes a request that the court hold an evidentiary hearing to observe and speak with the petitioner. Also pending are several other motions, some filed by Ms. Davis and some filed by the respondent, which will be addressed in this opinion. Ms. Davis is an attorney who filed a federal habeas corpus petition on the petitioner's behalf on November 21, 1995. This petition was dismissed by the court on March 31, 1999, pursuant to the petitioner's motion. Although the court has found the petitioner competent to dismiss Ms. Davis and to proceed *pro se*, Ms. Davis continues as the petitioner's attorney in this matter for the purpose of appealing this court's competency rulings.

I.  MOTION TO ALTER OR AMEND JUDGMENT

The petitioner is an inmate sentenced to die in Alabama's electric chair for two murders. Ms. Davis asks that the court alter or amend its judgment, which (1) adopted the

---

[1] As Michael Haley has become Commissioner of the Alabama Department of Corrections, his name is hereinafter substituted for that of Ron Jones as respondent.

Report and Recommendation of the magistrate judge, (2) granted the petitioner's request to proceed *pro se* and (3) dismissed, on the petitioner's motion, his habeas corpus petition. In so ruling, the court found, over Ms. Davis's objections, that the petitioner was competent to proceed *pro se* and to dismiss his habeas petition.

### A. Whether Possible Constitutional Errors Must be Addressed in Spite of Petitioner's Wishes

Ms. Davis first argues that the petitioner's case has not been adequately tested by the adversarial process because of the petitioner's attempts to dismiss counsel and represent himself, as well as his attempts to end the review process and hasten his execution. She states that

> [t]his case does not just involve Mr. Ford's competency. It also involves whether the State has the right to carry out a death sentence that has received, due to Mr. Ford's consistent attempts to dismiss counsel and seek his own execution, only a truncated review of its constitutionality.
> …
>
> The State's obligation to protect its citizens against unconstitutional convictions and sentences compels that this Court reconsider its judgment and permit a review of the legality of the sentence regardless of Mr. Ford's refusal to challenge its validity.

Motion to Alter or Amend Judgment at 2. Ms. Davis's argument seems to be that the court should not allow the state to execute the petitioner because there has not yet been an adequate opportunity to ferret out potential constitutional errors in his conviction and sentence.

The Supreme Court essentially rejected this view in *Whitmore v. Arkansas*, 495 U.S. 149 (1990). In *Whitmore*, when a death row inmate waived his right to a direct appeal, his "next friend" sought to intervene and appeal on his behalf. The Court found that the "next friend" lacked standing to challenge the validity of the condemned man's conviction, rejecting

the argument that, as a citizen of Arkansas, the "next friend" had the right to invoke the Court's jurisdiction "to insure that an execution is not carried out in Arkansas without appellate review." *Whitmore*, 495 U.S. at 160.

The *Whitmore* court stated that "'an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)). The Court likewise rejected the argument that the death penalty imposed in that case justified a "relaxed application of standing principles," stating that "[i]t is not for this Court to employ untethered notions of what might be good public policy to expand our jurisdiction in an appealing case." *Whitmore*, 495 U.S. at 161.

This case differs from *Whitmore* in that Ms. Davis is not a "next friend" trying to establish standing. She is an attorney that the petitioner has been found competent to dismiss, and she remains before the court for the purpose of testing the court's findings and conclusions regarding the petitioner's competency. Yet, this case is similar to *Whitmore* in that the petitioner does not want his conviction and sentence reviewed, but someone else does. The petitioner has the right to forgo further proceedings with respect to his conviction and sentence if he is competent to do so, and the court has found him to be.

Should the court review the conviction and sentence, in spite of the petitioner's wishes and in spite of his right to withdraw his habeas petition? Ms. Davis argues that the court should, because there is a danger that constitutional violations have gone undetected due to what happened during trial, on appeal and during post-conviction proceedings in the petitioner's case. Yet, *Whitmore* indicates that, even where the defendant drops his direct

appeal, meaning that his case has received *no* meaningful review at the state or federal level, the court should not make exceptions to the usual rules regarding standing to ensure that a possible constitutional violation will be righted. By the same token, if a competent death row petitioner has the right to withdraw his habeas petition, the potential existence of unaddressed constitutional violations does not empower the court to ignore that right. Because the court found the petitioner to be competent, his right to withdraw his habeas petition will be respected. Ms. Davis's motion is due to be denied as to this ground.

      B.    **Whether the Court Misapplied the Law or Conducted an Incomplete Analysis under *Rees***

Ms. Davis next argues that the court misapplied the standards set forth in *Rees v. Peyton*, 384 U.S. 312 (1966). She argues that the court did not focus on whether the petitioner "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees*, 384 U.S. at 314.

Ms. Davis suggests that, in applying *Rees*, the court erred by basing its decision merely upon the fact that the petitioner understands the consequences of his decision to withdraw his petition. This suggestion ignores much of the court's *Rees* analysis. It is true that the court considered the petitioner's clear understanding of the consequences of withdrawing his habeas petition, as well as the fact that the petitioner has steadily and repeatedly sought this result for about two years. It was appropriate for the court to consider these facts in its *Rees* analysis, as they are relevant to findings required under *Lonchar v. Zant*, 978 F. 2d 637, 641-42 (11th Cir.

1992), *cert. denied*, 507 U.S. 956 (1993), a case in which the Eleventh Circuit interpreted *Rees*. *Lonchar* requires other findings as well, and the court's analysis complies with these requirements.

In *Lonchar*, the court adopted a three-pronged test for determining whether a person is competent under *Rees*. Under *Lonchar*, a court must determine (1) whether the petitioner suffers from a mental disease, disorder or defect, (2) whether a mental disease, disorder or defect prevents the petitioner from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder or defect prevents the petitioner from making a rational choice among his options. *Lonchar*, 978 F.2d at 641-42 (11th Cir. 1992) (citation omitted).

In *Lonchar*, the lower court concluded that, although Lonchar suffered from a mental disorder, he "was able to understand his legal position and the options available to him," *Lonchar*, 978 F.2d at 642. In reaching this conclusion, the court relied not only upon expert testimony but also upon Lonchar's testimony, in which he "exhibited a basic understanding of the habeas proceedings, persisted in his opposition to further review of his convictions, and stated that he understood that without further proceedings he would be executed." *Lonchar*, 978 F.2d at 642. The *Lonchar* court held that the district court did not err in finding Lonchar competent under this test. It was thus appropriate under the *Lonchar* test's second factor for this court to consider the petitioner's understanding of the consequences of his decision. The court did not err in doing so.

Nor did the court fail to make necessary findings with respect to the first and third factors of the *Lonchar* test. The court not only made its own findings with respect to these

5

factors, but it also decided, after independently reviewing the record and the arguments of counsel, to adopt the magistrate judge's findings with respect to these two factors. The court noted in its Memorandum Opinion dated March 31, 1999, that

> [i]t is clear that the petitioner has significant behavioral and emotional problems and that he has led a very troubled life, but even if the court assumes that this allows the petitioner to meet the first prong of *Lonchar*, the evidence shows that he fails the next two prongs because, as stated above, the petitioner plainly understands that, in his legal situation, he must choose either to continue his legal challenges or be executed. (Doc. 29 at 15-18; Doc. 66 at 101-04). The evidence also indicates, as Judge Armstrong noted, that the petitioner has rational reasons for choosing the latter of these two options: he is weary of languishing in prison, he is justly pessimistic that he will ever get out of prison, and he believes that he will be happier in the afterlife. (Doc. 29 at 18, 26, 30-31; Doc. 66 at 104-07). Although Ms. Davis argues that the last of these considerations is not a normal religious belief but rather an insane delusion driving the petitioner to effectively commit suicide, this court agrees with Judge Armstrong that the petitioner's testimony proves otherwise. In addition, Dr. Rollins's testimony supports the finding that the petitioner is competent to dismiss his habeas petition.

(Memorandum Opinion entered March 31, 1999, at 16-17). Thus, the court made the appropriate findings under *Lonchar*, and did not base its opinion merely on the fact that the petitioner understood that the withdrawal of his habeas petition will lead to his execution.[2]

### C.    Whether the Court Erred in Adopting the Magistrate Judge's Findings

The court not only made its own findings and conclusions in this case, but, after independently reviewing the record, it also adopted the findings and conclusions set forth in the magistrate judge's Report and Recommendation. Ms. Davis attacks the magistrate judge's findings and conclusions on several bases, claiming that the court erred in relying upon them.

---

[2]*See also* Report and Recommendation at 24.

### 1. Whether the Magistrate Judge Erred in Relying on Dr. Rollins's Opinions

First, Ms. Davis complains that the magistrate judge "accepted, without question, Dr. Rollins's assertion that because Mr. Ford could buy a candy bar at the prison store or that Mr. Ford wants to be executed because he wants to go to Heaven that he can make a rational choice." (Motion to Alter or Amend Judgment at 3-4). Dr. Robert Rollins is the North Carolina forensic psychiatrist chosen by the court as its neutral expert from a list of nominees submitted by Ms. Davis.[3] After re-examining the magistrate judge's Report and Recommendation as well as Dr. Rollins's testimony and his Psychiatric Evaluation of the Petitioner, the court finds that this assertion mischaracterizes both Dr. Rollins' findings and conclusions as well as the magistrate judge's reliance upon them.

Dr. Rollins never asserted that the petitioner's ability to make spending decisions or his desire to go to heaven automatically render him competent to withdraw his habeas petition and to proceed *pro se*. In fact, Dr. Rollins's reference to the petitioner's ability to make spending decisions appears in the Addendum Psychiatric Evaluation,[4] which primarily deals with the effect of the petitioner's "translation" beliefs, which are discussed below, on his competency. The reference to spending decisions thus appears to be related to Dr. Rollins's analysis of the petitioner's translation beliefs, rather than to his general competency findings.

---

[3] Dr. Rollins reviewed voluminous records detailing the petitioner's medical and psychiatric history and conducted two examinations of the petitioner. One of these examinations took place just after the petitioner tried to commit suicide.

[4] The Addendum Psychiatric Evaluation is designated as document 61 in the court file.

7

In forming his opinions as to the petitioner's competency, Dr. Rollins did consider petitioner's statements that he was motivated in part by his belief in heaven and the likelihood that he would be happier there than in prison. Dr. Rollins concluded that these beliefs were not the product of a mental illness or disorder. Dr. Rollins also considered the petitioner's deep unhappiness and social isolation. He also opined as to why the petitioner has manifested certain unusual behavior or beliefs, what mental disorders affect the petitioner, and the effect of those disorders or unusual beliefs on the petitioner's competency to proceed *pro se* or to withdraw his habeas petition. It thus does not appear to the court that Dr. Rollins's conclusions are shallow, as Ms. Davis seems to suggest. The court again concludes that the magistrate judge did not err in considering or relying upon Dr. Rollins's findings and conclusions.

The court also notes that the magistrate judge did not rely exclusively and without question upon Dr. Rollins's testimony or upon any particular portion of it. Rather, the magistrate judge correctly considered Dr. Rollins's opinions along with his own impressions of the petitioner and the petitioner's testimony during the competency hearings. Likewise, it is quite clear that the magistrate judge reviewed the voluminous records in this case, including those of the petitioner's youth and incarceration and that these impacted the magistrate judge's findings and conclusions. The court therefore cannot agree with Ms. Davis that the magistrate judge accepted "without question" any conclusion of Dr. Rollins. The Motion to Alter or Amend is due to be denied on this ground.

2.  **Whether the Magistrate Judge Fully Examined the Petitioner's Reasoning Process**

Ms. Davis next complains that "[t]he magistrate judge's inquiry about Mr. Ford's rationality stopped when the magistrate decided that Mr. Ford's choice was logical, in the sense of being the product of Mr. Ford's process of reason." (Motion to Alter or Amend Judgment at 4). She argues that the magistrate judge erred because the petitioner, while using logical thinking processes, was reasoning from irrational premises. She points to the petitioner's belief that he will sit at the left hand of God in the afterlife, where he will be glorified, and to his belief that he can "translate" to places outside of the prison walls and have experiences there.[5] She states that someone reasoning from these premises cannot make a rational decision. She argues that *Rees* requires that the petitioner reason from premises that are within the range of those our society accepts as rational.

The court disagrees with Ms. Davis's characterization of the magistrate judge's inquiry. The magistrate judge did not merely conduct a sterile examination of the logical mechanics behind the petitioner's decision. He also closely examined the premises underlying the petitioner's decision. After listening to the petitioner's testimony about those premises and reviewing the expert opinion evidence, the magistrate judge concluded that the petitioner's beliefs about the afterlife, upon which the petitioner's decision is partially based, did not prove

---

[5]The petitioner stated that, during his "translation" experiences, he has had girlfriends, been married, had children, acquired money, started businesses, and been to church with one of his prison guards. Dr. Rollins opined that "translation" represents fantasy or wish fulfillment of the petitioner, and that it does not affect his competency to proceed *pro se* or to withdraw his habeas petition.

him to be incompetent to dismiss his habeas petition and to proceed *pro se*.[6] The magistrate judge relied on Dr. Rollins's findings that the petitioner's beliefs did not reflect a mental disorder, that such beliefs are part of the normal range of religious beliefs, and that the petitioner does not have "the educational or philosophical background perhaps to take more than a fairly direct interpretation of the Bible."[7] (Transcript of June 10, 1998 Evidentiary Hearing at 29). The magistrate judge also relied on the petitioner's testimony in which he stated his reasons for wanting to withdraw his habeas petition and be executed.

Although the magistrate judge found the petitioner's belief in "translation" to be bizarre, he relied upon Dr. Rollins's findings that it represents fantasy or wish fulfillment and does not impair his ability to make decisions. Dr. Rollins stated that the petitioner "makes

---

[6]The magistrate judge also noted, as does this court, that the petitioner's decision was also based upon his weariness with prison life and upon his well-founded belief that he will never be a free man again.

[7]Ms. Davis attacks the weight Dr. Rollins assigned to the petitioner's unusual religious beliefs in finding him to be competent. The court notes, however, that Dr. Rollins came to the opposite conclusion when he evaluated another death row inmate holding strange religious beliefs in *Brewer v. Lewis*, 997 F.2d 550 (9th Cir. 1993) (dissent from failure to grant en banc review). In that case, the inmate's mother argued that he was incompetent to represent his own interests, and Dr. Rollins was called to give an opinion on this issue. The inmate had tried to commit suicide several times and had professed religious beliefs in two deities, "the God 'Dantain' and the man-Elf 'Fro,' who together rule over a planet called 'Terracia.'" *Brewer*, 997 F.2d at 554. The inmate had also stated a belief that "Fro" had been incarnated on earth as his girlfriend, for whose murder he was sentenced to death. *Id*. There was also evidence that the inmate believed that he would rejoin Rita-Fro on Terracia after his execution. *Id*. Dr. Rollins submitted an affidavit reflecting "his 'medical certainty' that the inmate was not currently competent to participate in legal proceedings." *Id*. He stated that the inmate's mental disorder "prevents him from conducting his affairs in a rational manner and making reasoned choices in the pending legal proceedings," *Id.*, n.5, and that "[his] isolation and alienation in prison for the last five years has exacerbated his mental illness and increased his suicidal ideation." *Id*. He concluded that the inmate was "not competent to participate in legal proceedings at the present time." *Id*.

decisions about his daily activities and interactions. He decides who to ask for money and how to spend his money. He would be considered competent to consent to surgery, make a will, or enter in financial transactions." (Report and Recommendation at 21 (quoting Addendum Psychiatric Evaluation at 5)).[8] Ms. Davis's criticism of Dr. Rollins's opinions in this regard does not convince the court that the magistrate judge erred in relying upon his opinions. The Motion to Alter or Amend Judgment is due to be denied on this ground.

### 3. Whether the Magistrate Judge Erred by Denying Ms. Davis's Discovery Motion

Ms. Davis argues that her Motion for Discovery of Specified Records should have been granted, because she contends that both Dr. Rollins and the magistrate judge needed to review

---

[8]Ms. Davis criticizes these statements. She cites the report of her expert, Jonathan Pincus, M.D., which states that Dr. Rollins's analogies are not sound, since the petitioner would not be considered competent to consent to have a healthy eye removed or to be castrated or to give away all his money to a model in a magazine. The magistrate judge was not convinced by this reasoning, and neither is this court. First, the challenged statements appear in Dr. Rollins's Addendum Psychiatric Evaluation, which primarily deals with the petitioner's professed "translation" beliefs and their effect on the petitioner's competency. Thus, it appears that they are offered not as proof of the petitioner's competency, but as examples of why the petitioner's "translation" beliefs do not render him incompetent or divide him from day-to-day reality. Second, Dr. Pincus's arguments are unpersuasive, since the state has not sentenced the petitioner to have a healthy eye removed or to be castrated. In volunteering for such procedures, the petitioner would not be accepting a punishment imposed by the state, but engaging in an act of self-mutilation that would not occur without his initiative. It is doubtful that the petitioner could rationally assert any benefit he would receive from, or suffering he would escape by, the removal of a healthy eye or castration. On the other hand, the petitioner is able to give some rational reasons for wanting to proceed with his execution rather than allowing the appellate process to play out. He reasons that "waiting is a punishment" (Tr. Of June 10, 1998, hearing at 107), that he will probably never be free again, that his execution will probably occur eventually and that he will encounter a happier existence in the afterlife. Dr. Pincus's analogy about the petitioner giving his money to a model is not particularly useful, as it does not involve detriment to the petitioner's health or life but rather to the more logical recipients of his largesse.

11

them. Ms. Davis stated in the motion that the documents she sought would provide "additional illumination" to the court and could possibly contain "important evidence about the chronic nature of Mr. Ford's mental health condition."

At the time of petitioner's discovery motion, there were already voluminous documents relevant to the competency determination in the record, including well over a decade of prison medical and mental health records, as well as extensive documentation of the petitioner's mental and behavioral state throughout his childhood and adolescence. There was little need for yet more evidence regarding the petitioner's long-term mental condition. Indeed, more evidence would have been repetitive and superfluous. The magistrate judge was not remiss in denying the motion, particularly since Dr. Rollins stated that he did not need any of the documents and since Dr. Pincus never indicated in his letter setting forth his findings that he lacked any necessary records or materials to evaluate the petitioner. It is highly unlikely that the documents would have been of any significant assistance to the magistrate judge if they were not deemed necessary by the court's expert or by Ms. Davis's expert. The Motion to Alter or Amend is due to be denied on this ground.

### 4. Whether the Magistrate Judge Erred in Evaluating Dr. Pincus's Report

Ms. Davis complains that, in his Report and Recommendation, the magistrate judge erred in finding that Dr. Pincus's report revealed an underlying assumption that the petitioner's decision to withdraw his habeas petition and proceed to his execution was irrational *per se* because it would result in his death. Ms. Davis argues that Dr. Pincus's report simply states that, based upon the petitioner's neurological findings and psychiatric history, there were

questions about his competence to engage in activities that would clearly be to his detriment. (Motion to Alter or Amend Judgment at 6).

The court has reviewed Dr. Pincus's report once again. It outlines neurological indications that lead him to believe that the petitioner has damage to the right hemisphere of his brain, presumably caused by his premature birth. It also outlines the inappropriate and abusive discipline the petitioner was subjected to in his childhood, the symptoms of his hyperactivity, the mental problems encountered by certain family members of the petitioner's father and the indications that lead Dr. Pincus to believe the petitioner has bipolar disorder. He describes the petitioner as psychotic, and concludes that the petitioner cannot competently choose to do something that would be to his detriment, such as withdrawing his habeas petition.

The court must agree with the magistrate judge that Dr. Pincus's report betrays an underlying assumption that the petitioner cannot be competent if he would seek a result that would lead to his execution. When Dr. Pincus compares the petitioner's motion to withdraw his habeas petition to a request to have a healthy eye to be removed or to be castrated, this assumption is revealed. These self-mutilation analogies do not represent the acceptance of a sentence imposed by the state and are without any conceivable rational basis. The magistrate judge did not err in evaluating Dr. Pincus's report and was justified in regarding Dr. Rollins's opinions as more credible than those of Dr. Pincus.[9] Ms. Davis's Motion to Alter or Amend

---

[9]Although clearly not relevant to the court's opinion, this is not the only case in which a court, faced with conflicting expert testimony about the mental condition of a death row petitioner from Dr. Pincus and another expert, has found Dr. Pincus's opinion to be less persuasive than the other opinion offered. In *Bonin v. Vasquez*, 807 F. Supp. 589, (C.D. Cal.

is due to be denied as to this ground.

   D.   **CONCLUSION**

The court has painstakingly reconsidered its findings and conclusions in this matter, including those adopted from the magistrate judge's Report and Recommendation, and has found no cause to alter or amend them. Ms. Davis's Motion to Alter or Amend Judgment is therefore due to be denied, as is the request for another evidentiary hearing contained therein.

II.   **MOTIONS OTHER THAN THE MOTION TO ALTER OR AMEND JUDGMENT**

Other than Ms. Davis's Motion to Alter or Amend Judgment, the following motions are before the court: a Motion to Strike Motion to Alter or Amend Judgment filed by the respondent, a Motion for Access filed by Ms. Davis, a Motion to Strike Notice of Appeal filed by the respondent, a Motion for Stay of Execution filed by Ms. Davis and a Motion to Strike Motion for Stay of Execution filed by the respondent.

In asserting or responding to these motions, the respondent takes the position that, because the petitioner was found competent to proceed *pro se* and to dismiss Ms. Davis, who

---

1992), *aff'd*, 59 F.3d 815 (9th Cir. (1995), *cert. denied*, 516 U.S. 1051 (1996), the court stated as follows: "[f]orced to choose between competing psychiatric and neurological testimony, the Court finds that Drs. Dietz and Nuwer were more credible than Dr. Pincus. The Court cannot help but believe that Dr. Pincus' views on the inappropriateness of the death penalty affect his clinical interpretations in this highly subjective area of medicine." *Bonin*, 807 F. Supp. at 598. "Dr. Pincus testified that he has examined approximately 20 death row inmates in the past five years. Though Dr. Pincus denied any philosophical opposition to the death penalty, he stated a firm belief that life without the possibility of parole is the appropriate sentence whenever any mitigating evidence is presented, no matter how heinous the crime." *Id.* at 598, n.9.

refuses to assist him in his quest to hasten his execution, that the petitioner is now proceeding *pro se*. The respondent therefore asserts that Ms. Davis has no standing to file any motions in this case or to have access to the petitioner for any reason. The court disagrees. Ms. Davis retains standing to test the court's competency rulings on appeal. Indeed, if the court has erred in finding the petitioner competent to proceed *pro se* and to dismiss his habeas petition, there is little chance that such an error will ever be discovered or corrected without Ms. Davis's action. As Ms. Davis correctly points out, persons seeking "next friend" status to assert rights on behalf of condemned prisoners are generally allowed to test a lower court's denial of "next friend" status on appeal.[10] *See Lonchar v. Zant,* 978 F.2d 637 (11th Cir. 1992), *cert. denied,* 507 U.S. 956 (1993). "Next friend" status in a case such as this depends in large part upon the competency findings required under *Rees*, such as those the court has made in this case. *See Lonchar*, 978 F.2d at 640-42. Although Ms. Davis is not in the position of a "next friend," she has a similar claim to standing for the purposes of appeal. The court finds that Ms. Davis has standing to test on appeal the court's findings and conclusions about the petitioner's competence. To the extent that the respondent asserts or opposes any motion based upon a contrary position, he cannot prevail. The respondent's Motion to Strike Motion to Alter or Amend Judgment is therefore due to be denied. On this basis as well, the Motion for Access

---

[10]*See also Wounded Knee Legal Defense/Offense Committee v. F. B. I.*, 507 F.2d 1281, 1284 (8th Cir. 1974) ("a lawyer has standing to challenge any act which interferes with his professional obligation to his client and thereby, through the lawyer, invades the client's constitutional right to counsel."). If, as Ms. Davis argues, the court has erred in finding the petitioner competent to dismiss her so that he may withdraw his habeas petition, Ms. Davis still owes certain professional obligations to the petitioner. She thus has standing to challenge not only the ruling that the petitioner is competent to proceed *pro se*, but also the closely related ruling that the petitioner is competent to withdraw his habeas petition.

15

is due to be granted and both the Motion to Strike Notice of Appeal[11] and the Motion to Strike Motion for Stay of Execution are due to be denied.

Ms. Davis's Motion for Stay of Execution is due to be denied. Although she argues that the court still needs to resolve motions before it, the court's Order issued contemporaneously herewith resolves all pending motions before it in this matter. Ms. Davis further argues that the stay should be granted because the court's holding is appealable. The court finds, however, that the appellate court would be the more appropriate body to decide the issue of whether a stay of execution should be granted.

### III. CONCLUSION

In accordance with the court's reasoning and findings discussed herein, an appropriate Order will be entered contemporaneously herewith.

DONE this 1st of July, 1999.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[11] While the Motion to Alter or Amend Judgment was pending before the court, Ms. Davis filed a Notice of Appeal. Although the court finds that the Motion to Strike the Notice of Appeal is due to be denied, the court makes no finding as to whether the Notice of Appeal was filed at the appropriate time.